## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BRIEANNA KRISTEN GUNSAY** ) | |
| **1200 G Street N.W.** ) | |
| **Suite 800** ) | |
| **Washington, DC 20005** ) | |
| ) | |
| **and** ) | |
| ) | |
| **KRISTEN PETIT GUNSAY** ) | |
| **1200 G Street, N.W.** ) | |
| **Suite 800** ) | |
| **Washington, DC 20005** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Civil Case No.** |
| ) | |
| ) | |
| **B. ROBERT MOZAYENI, M.D.** ) | |
| **6000 Executive Blvd., Suite 304** ) | |
| **North Bethesda, MD 20852** ) | |
| ) | |
| **and** ) | |
| ) | |
| **DEPUTY TROY PLUMMER, #6137** ) | |
| **Individually and in his official capacity** ) | |
| **as a Montgomery County Sheriff's Deputy** ) | |
| **Montgomery County Sheriff's Office** ) | |
| **50 Maryland Avenue** ) | |
| **Rockville, MD 20850** ) | |
| ) | |
| **and** ) | |
| ) | |
| **DEPUTY HENDERSON** ) | |
| **Individually and in his official capacity** ) | |
| **as a Montgomery County Sheriff's Deputy** ) | |
| **Montgomery County Sheriff's Office** ) | |
| **50 Maryland Avenue** ) | |
| **Rockville, MD 20850** ) | |
| ) | |
| **and** ) | |
| ) | |
| **DEPUTY WADE** ) | |
| **Individually and in his official capacity** ) | |

as a Montgomery County Sheriff's Deputy )
Montgomery County Sheriff's Office )
50 Maryland Avenue )
Rockville, MD 20850 )
)
    **and** )
)
**DEPUTY KEVIN STULTZ, #6194** )
**Individually and in his official capacity** )
**as a Montgomery County Sheriff's Deputy** )
**Montgomery County Sheriff's Office** )
**50 Maryland Avenue** )
**Rockville, MD 20850** )
)
    **and** )
)
**SPECIAL AGENT DAN BALOCKI** )
**Individually and in his official capacity** )
**as a special agent with the State Department's** )
**Diplomatic Security Service** )
**United States Department of State's** )
**Bureau of Diplomatic Security's** )
**Washington Field Office** )
**2222 Gallows Rd, Suite 300** )
**Dunn Loring, VA 22027** )
)
    **and** )
)
**THE UNITED STATES OF AMERICA,** )
)
**SERVE:**    **Rod J. Rosenstein** )
               **U.S. Attorney for the** )
               **District of Maryland** )
               **36 S. Charles Street** )
               **4th Floor** )
               **Baltimore, MD 21201** )
)
    **and** )
)
               **Eric H. Holder, Jr.** )
               **Attorney General of the U. S. A.** )
               **U.S. Department of Justice** )
               **950 Pennsylvania Avenue, N.W.** )
               **Washington, D.C. 20530** )
)

   **and**            )
                   )
**UNITED STATES MARSHAL JOHN DOE #1** )
**Individually and in his/her official capacity** )
**as a United States Marshall**      )
**United States Courthouse**       )
**3rd & Constitution Avenue, N.W., Room 1103** )
**Washington, DC 20001**        )
                   )
   **and**            )
                   )
**UNITED STATES MARSHAL JOHN DOE #2** )
**Individually and in his/her official capacity** )
**as a United States Marshall**      )
**United States Courthouse**       )
**3rd & Constitution Avenue, N.W., Room 1103** )
**Washington, DC 20001**        )
                   )
   **and**            )
                   )
**METIN ATA GUNSAY**       )
**13940 South 4000 West**       )
**Bluffdale, Utah 84065**        )
                   )
   **and**            )
                   )
**LINDA LEE MOYER WILLIAMS**   )
**891 Upland Drive**          )
**Tooele, Utah 84074**         )
                   )
       **Defendants.**    )
                   )

---

## COMPLAINT AND JURY DEMAND

   COME NOW plaintiffs, Brieanna Kristen Gunsay and Kristen Petit Gunsay, by and through counsel, and sue defendants, Dr. B. Robert Mozayeni, Montgomery County Sheriff's Deputy Troy Plummer, #6137, Montgomery County Sheriff's Deputy Officer Henderson, Montgomery County Sheriff's Deputy Wade, Montgomery County Sheriff's

Deputy Kevin Stultz, #6194, Special Agent Dan Balocki, United States of America, United States Marshal John Doe #1, United States Marshal John Doe #2, the State of Maryland, Metin Gunsay, and Linda Moyer Williams, and as cause therefore states the following:

## **INTRODUCTION**

This suit is brought by Brieanna Kristen Gunsay and Kristen Petit Gunsay, after Brieanna's treating physician, Doctor Robert Mozayeni, contacted her violent and abusive biological father, Metin Gunsay and thereafter set in motion events and actions which led to violations of the plaintiffs constitutional rights and caused them serious and prolonged emotional distress.

Plaintiff Brieanna Gunsay, who is an adult, and was an adult at the time the actions giving rise to this lawsuit arose, has been stalked by and has been hiding from defendant Metin Gunsay for several years, and she and her mother had been required to seek several restraining orders to safeguard their physical and emotional well-being. The disclosure of Brieanna's whereabouts illegally by defendant Mozayeni, allowed defendant Metin Gunsay to locate her. After locating plaintiff Brieanna Gunsay, defendant Metin Gunsay contacted rogue law enforcement officials who, instead of enforcing the protective and restraining orders against Metin Gunsay, gathered a team of rogue law enforcement officials, consisting of the Montgomery County Sheriff's Deputies, United States Marshals, and individual(s) from the United States' State Department's Bureau of Diplomatic Security, who sadistically violated plaintiffs' constitutional rights.

The rogue law enforcement personnel recruited by defendants Metin Gunsay and Linda Williams forced plaintiff Brieanna Gunsay, at gun point, to meet with defendant Linda Williams , the mother of the violent and abusive man from whom she had spent years hiding.

-4-

## JURISDICTION AND VENUE

Jurisdiction exists in this case pursuant to the Fourth and Fifth Amendments to the Constitution, and under 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343.

## PARTIES

1.   Plaintiff Brieanna Kristen Gunsay ("Brieanna") is the adult daughter of plaintiff Kristen Pettit Gunsay and defendant Metin Gunsay.   She currently resides in Maryland where she is receiving specialized medical care.

2.   Plaintiff Kristen Petit Gunsay ("Kristen") is the ex-wife of defendant Metin Gunsay and she currently resides in Maryland while her daughter Brieanna receives specialized medical care.

3.   Defendant B. Robert Mozayeni, M.D., was Brieanna's treating physician.

4.   Montgomery County Sheriff's Deputy Troy Plummer, #6137, was at all times relevant to this proceeding, a Montgomery County Sheriff's Deputy, acting within the course and scope of his employment as an agent, servant, and employee of Montgomery County, Maryland.

5.   Montgomery County Sheriff's Deputy Henderson, was at all times relevant to this proceeding, a Montgomery County Sheriff's Deputy, acting within the course and scope of his employment as an agent, servant, and employee of Montgomery County, Maryland.

6.   Montgomery County Sheriff's Deputy Wade, was at all times relevant to this proceeding, a Montgomery County Sheriff's Deputy, acting within the course and scope of his employment as an agent, servant, and employee of Montgomery County, Maryland.

7.   Montgomery County Sheriff's Deputy Kevin Stultz, was at all times relevant to this proceeding, a Montgomery County Sheriff's Deputy, acting within the course and scope

of his employment as an agent, servant, and employee of Montgomery County, Maryland.

8.  Montgomery County Sheriff's Deputy John Doe #1, was at all times relevant to this proceeding, a Montgomery County Sheriff's Deputy, acting within the course and scope of his employment as an agent, servant, and employee of Montgomery County, Maryland.

9.  Montgomery County, Maryland employed the individual Defendants, Montgomery County Sheriff's Deputy Troy Plummer, #6137, Montgomery County Sheriff's Deputy Henderson, Montgomery County Sheriff's Deputy Wade, Montgomery County Sheriff's Deputy Kevin Stultz, Montgomery County Sheriff's Deputy John Doe #1 Badge # 6194.

10. Defendant United States of America is the proper party with respect to plaintiff's Federal Tort Claims Act claims pursuant to 28 U.S.C. § 2679.

11. Special Agent Dan Balocki is an agent with the United States Department of States' Diplomatic Security Service.  At all time herein, he was acting in his individual and official capacity as an agent of the United States.

12. The United States Marshals Service employed United States Marshal John Doe #1 and United States Marshal John Doe #2.

13. Metin Gunsay is the biological father of Brienna and the ex-husband of Kristen. He currently resides in Utah.

14. Linda Moyer Williams is Metin Gunsay's mother and resides in Utah.

## FACTS COMMON TO ALL COUNTS

15. On July 29, 1988, Metin Gunsay and Kristen Petit were married.  On June 30, 1989, Brieanna Kristen Gunsay was born to the couple.

16. In November 1991, Kristen and Metin separated and Kristen filed for divorce.

17.   On July 9, 1993, the Fourth Judicial District Court for Utah County entered a Decree of Divorce.  The Decree awarded Kristen sole custody of Brieanna.  In addition, the Decree set a series of strict restrictions on the visitation rights of Metin Gunsay which he stipulated to as they were the result of years of physical and verbal abuse perpetrated by him against his wife and his daughter.

18.   Among other restrictions, the Decree of Divorce stated that M. Gunsay "shall provide information to [Kristen] as to where the child is going for visitation"; "shall not force the child to go with [him] for visitation if said child does not want to go," and that "[Metin] will return said child prematurely if said child indicates a desire to return home."

19.   In 1997, Kristen and Brieanna moved to Canada.  Brieanna began attending school in British Columbia in September 1997.

20.   Despite the Decree and despite the years of physical and verbal abuse, Kristen still made an effort to allow Metin to see Brieanna.  In the fall of 1997, Kristen paid for Brieanna to travel to Utah to visit her father on three separate occasions.  After one such visit, for Christmas vacation in 1997, M. Gunsay informed Kristen that she would never see Bireanna again and he would not allow Brieanna to get on her flight to California (where Brieanna was to meet her mother for her birthday. M. Gunsay refused to return Brieanna to Kristen's custody and hid her).  This action forced Kristen to travel to Utah to search for her daughter and to request a court order requiring M. Gunsay to return Brieanna to her custody.

21.   On January 2, 1998, Kristen obtained the court order allowing her to take her daughter back home.

22.   When Kristen and Brieanna returned to Canada, Brieanna exhibited severe emotional behavior as a result of the attempting kidnapping by M. Gunsay.

23.   Brieanna feared her father based on the campaign of physical and emotional abuse that he had waged against her.  Between the time that she was a young child and eight years old, M. Gunsay terrorized Brieanna.

24.   On January 26, 1998, the Supreme Court of British Columbia entered an order, preventing either Kristen or Metin from removing Brieanna from British Columbia without a court order.  This order was based on the findings of Dr. Elterman and Dr. Brouillette.

25.  In March 1998, Metin fully participated in a custody evaluation and obtained two further custody evaluations in British Columbia in 2000, during which he was represented by counsel.  On January 20, 1999, the Supreme Court of British Columbia ordered that Metin Gunsay be "restrained from having any contact with the child, BRIEANNA KRISTEN GUNSAY. . . ."

26.   On November 12, 1999, the Supreme Court of British Columbia issued another restraining order, directing that "Metin Ata Gunsay, Linda Moyer [Metin's mother], and anyone acting on their behalf or at their direction . . . are hereby restrained and enjoined from attending within the geographical limits of the City of West Vancouver. . . ."  The restraining order authorized any peace officer to arrest Metin Gunsay or Linda Moyer for breach of the restraining order.

27.   On January 10, 2000, the Supreme Court of British Columbia awarded Kristen Gunsay permanent custody of Brieanna.  As part of the Supreme Court's order, Metin Gunsay and Linda Moyer were required to provide advance notice of any trip to Canada, and were "restrained and enjoined from attending within the geographical limits of the City of West Vancouver."  Metin Gunsay and Linda Moyer were also ordered to "return all photographs of [Brieanna] obtained by them since December 1997. . . ."

28.  On October 25, 2001, the Supreme Court of British Columbia issued yet another restraining order against Melanie and Metin Gunsay.  The restraining order prohibited Metin and Melanie from "molesting, annoying, harassing, or communicating with or attempting to molest, annoy, harass, or communicate with [Brieanna], or interfere in any with Brieanna Kristen Gunsay. . . ."  The restraining order also prohibited M. Gunsay and and his then wife, Melanie, from "contacting or endeavouring to contact" Brieanna, her mother, and Mark Steinley, and their respective families.

29.  Despite all of these court orders – orders that awarded Kristen sole custody of Brieanna and restricted M. Gunsay from contacting either Brieanna or her mother - Metin maintained that Kristen had abducted Brieanna and taken her to Canada.

30.  To perpetuate and propagate this falsehood, M. Gunsay created a website, www.brieanna.org.  Metin also used the website to harass and intimidate Brieanna and her mother, by posting a series of vitriolic letters on the site.  Metin also used the website to elicit information on Brieanna's whereabouts.  Metin's heading for the website was "Letters to a daughter abducted to Canada, from her father who misses her greatly."

31.  To ensure that everyone visiting the website knew that "Brieanna" referred to the Plaintiff, Metin prominently displayed the words, "Welcome Brieanna Gunsay" on the home page of brieanna.org, with the caption "This is your website," posted directly below that.

32.  Because of a rare illness, Brieanna began receiving specialized medical treatment in the United States.  She received some of her treatment at Johns Hopkins University and some of her medical treatment from Dr. B. Robert Mozayeni.  Brieanna would see defendant Mozayeni for her rare infection and hyperbaric oxygen treatment (HBOT).

33.   A man named Tony assisted defendant Mozayeni in administering the HBOT sessions.   During the sessions, Tony and defendant Mozayeni began asking Brieanna questions about her father. Brieanna explained to defendant Mozayeni that M. Gunsay had been very abusive to her, she wanted nothing to do with him, and she had a permanent restraining order against him.

34.   Without consulting Brieanna or her mother, defendant Mozayeni and his assistant, Tony,   contacted defendant Metin Gunsay and informed him that they were treating Brieanna.   In doing so, defendant Mozayeni and his assistant, Tony, betrayed Brieanna's privacy and exposed her to great danger.

35.   After defendant Mozayeni and his assistant, Tony, told defendant M. Gunsay that Brieanna was their patient, he was able to determine Brieanna's exact whereabouts. Defendant M. Gunsay immediately took advantage of this unlawfully provided information, and flew from Utah to Maryland.

36.   Upon arriving in Maryland, defendant Metin Gunsay contacted rogue individuals employed in the area of law enforcement and was able to convince them to enlist a number of other corrupt individuals employed in the field of law enforcement to detain and imprison the plaintiffs in collusion with defendant Mozayeni and his assistant, Tony.

37.   At approximately 4:30 p.m., on April 19, 2011, the plaintiffs arrived in the parking lot of defendant Mozayeni medical office for a scheduled appointment to start one of her treatments.   As they did so, four cars containing 9 armed rogue law-enforcement officers did then and there seize the plaintiffs.

38.   These rogue officers were from several different agencies including the Montgomery County Sheriff's Department, the State Department's Diplomatic Security

Service, and the United States Marshals Service's Capital Area Regional Fugitive Task Force.

39.   Officers with the Montgomery County Sheriff's Department purported to  serve a bogus warrant upon Kristen Gunsay in concert members of the United States Department of State's Diplomatic Security Service, and the United States Marshals Service's Capital Area Regional Fugitive Task Force.

40.   These rogue officers jumped out of their vehicles, and approached Brieanna and her mother's vehicle with their guns pointed at their heads, treating the situation as a felony-stop, and treating Brieanna's mother as a violent and dangerous fugitive.  After approaching the vehicle, the officers pointed their guns directly at Kristen and Bireanna's heads, and ordered Kristen to unlock the door.  The officers pulled Kristen out of her vehicle and threw her onto the ground.

41.   Meanwhile, M. Gunsay  and defendant Williams were watching this scene unfold from one of the deputy's vehicles that was stopped approximately 10 feet away, in the same parking lot.  The illegal seizure was coordinated with the assistance of defendant Mozayeni's office.

42.   Brieanna was also forced out of the car with guns pointed at her head.  She was grabbed and held at gunpoint as she became extremely upset.   The officers, who were not in uniform, would not answer Brieanna, they only threatened her with profanities.  When Brieanna demanded an explanation, the officers would not tell Brieanna what was happening.  Instead, they attempted to force her to meet with defendants Metin Gunsay and Linda Williams.  She was told that she could not leave until she did so.  After the officers took Kristen away, they continued to detain Brieanna, all the while telling her that she had

been kidnapped and brainwashed by her mother. Brieanna tried to explain the protective orders and her biological father's violent and abusive past, to no avail.

43.   The defendant officers instructed Brieanna that she had no choice and that she was going to see her father and grandmother.  Brieanna refused, but the officers insisted on the interaction. Brieanna was crying at this point and pleaded with the officers, telling them that M. Gunsay was severely abusive to her, a rapist, and that she had a permanent restraining order against him, and his mother. The defendant officers grabbed, and yanked her by the arms, pushed and manhandled Brieanna, physically encircled Brieanna and held her against the car. Because of Brieanna's weakness from her illness, and her disabilities and neck injury, Brieanna was terrified that they were going to permanently physically injure her during this ordeal.

44.   As the officers encircled Brieanna, defendant Williams approached Brieanna and grabbed her and held her fixed by the shoulders and arms.

45.   Brieanna, crying profusely, shouted that she did not want to see them and that they needed to leave her alone.

46.   During this forced encounter, the defendant officers had their guns drawn on Brieanna.  During this forced encounter, the defendant officers searched Kristen's car and took away Brieanna's personal belongings, including her passport, phone, medical records, photographs, and other personal items.

47.   Finally, the defendant officers stated that the registration tags were expired and towed the vehicle.

48.   After holding her for more than an hour, the rogue officers allowed Brieanna to leave when it became apparent that she was going to continue to refuse to be forced into the

car with defendant M. Gunsay and defendant Williams.  After being released, Brieanna ran into Dr. Mozayeni's office crying, and because the defendant officers took her phone, used the doctor's phone to call for help.

49.  While they waited, the nurse confided that defendant Mozayeni had seen Metin Gunsay's website.

50.  When help arrived, Brieanna exited the office and ran into her friend's car.  As she drove past defendant Metin Gunsay, he made threats of violence by running his forefinger across the front of his neck, in a throat-slashing motion.

51.  Plaintiff Kristen Gunsay was in jail while all of this was happening and was held there overnight for no legitimate reason at all.

52.  The stress and trauma related to facing down armed law enforcement officers, being stripped of her possessions, watching her mother be arrested and escorted away, being forced to interact with her abusive and violent biological father, being set-up by her own doctor, and having to find a new doctor were extreme and overwhelming for Brieanna.

53.  This extreme and overwhelming stress and trauma cost Brieanna and her family many months' worth of medical progress.  In addition, Brieanna's condition became actively worse, all her symptoms that had improved suddenly deteriorated significantly and she began to suffer from panic attacks, depression, and other symptoms.  In a matter of hours, defendant Mozayeni, Metin Gunsay, Linda Williams, and the defendant officers wiped out many months of medical treatment and progress.

54.  Defendant Mozayeni and members of his office disclosed Brieanna Gunsay's confidential information medical records, allowed Metin Gunsay to locate Brieanna, placing her in grave danger, and issued threats related to Brieanna's health and well-being.

55.   After defendant M. Gunsay orchestrated the detention and arrest of plaintiff Kristen Gunsay and attempted abduction of plaintiff Brieanna Gunsay had the audacity to post another letter on brieanna.org.  In this letter, dated April 22, 2011, defendant Metin Gunsay wrote that Brieanna was living in a fantasy world, and that her life was "just as contrived, controlled, and scripted" as the life of the character in the movie, *The Truman Show*.

56.   At all times relevant hereto, the defendants acted without legal justification or excuse.   At all times relevant hereto, the Defendants acted deliberately, with ill will, improper motive and actual malice.

57.   As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants, as well as those stated elsewhere herein, Brieanna Gunsay was caused to suffer and continues to suffer mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, and loss of enjoyment of life.  Plaintiff was also caused to suffer extreme physical pain and distress as well as economic damages, including, but not limited to, medical bills, lost earning capacity, and attorneys' fees, all to her great detriment.

58.   As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants, as well as those stated elsewhere herein, Kristen Gunsay was caused to suffer and continues to suffer mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, and loss of enjoyment of life.  Plaintiff was also caused to suffer extreme physical pain and distress as well as economic damages, including, but not limited to, medical bills, lost earning capacity, and attorneys' fees, all to her great detriment.

59.  All of Plaintiffs' injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of Defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of Plaintiffs, either directly or indirectly.

## COUNT I
### (42 U.S.C. § 1983 – 4th Amendment, 5th Amendment, All Defendants Except Williams, Gunsay & Mozayeni )

60.  Plaintiffs adopt and incorporate by reference paragraphs 1-59 as if fully set forth herein.

61.  This cause of action is brought by the plaintiffs, against the defendant Deputy Sheriffs for the deprivation of their constitutional rights, within the meaning of 42 U.S.C. § 1983.

62.  The defendant Deputy Sheriffs deprived and/or allowed plaintiffs to be deprived of rights and privileges secured by the Constitution and laws of the United States, within the meaning of 42 U.S.C. § 1983.

63.  The Defendants deprived Brieanna Gunsay of her constitutional rights under the Fourth, and Fifth Amendments of the United States Constitution by unlawfully seizing her, falsely arresting her without probable cause, and then forcing her, at gun point, to associate with her abusive and violent biological father, and his mother, against her will, all without any due process of law.

64.  The Deputy Sheriff defendants deprived Kristen Gunsay of her constitutional rights under the Fourth and Fifth Amendments of the United States Constitution by unlawfully seizing her, falsely arresting her without probable cause, using unnecessary force against her, and then falsely imprisoning her, all without due process of law.

-15-

65.   The Deputy Sheriff defendants described above committed each of the wrongful acts alleged in this complaint, and they committed these wrongful acts under the color and pretense of law.

66.   The individual Deputies committed each of the acts knowingly, intentionally, and maliciously and/or with deliberate indifference to thye rights of the plaintiffs.  As a result, plaintiffs are entitled to an award of compensatory and punitive damages.

WHEREFORE, Plaintiffs Brieanna Gunsay and Kristen Petit Gunsay demand judgment against Defendants in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, but not less than FIVE MILLION DOLLARS ($5,000,000.00), and such other and further relief as the nature of the case requires.

### COUNT II
### (42 U.S.C. §1985 – Conspiracy – as against all Defendants)

67.   Plaintiffs adopt and incorporate by reference paragraphs 1-59 as if fully set forth herein.

68.   The defendants acted in concert and conspired with the other to violate the constitutional rights of the plaintiffs, and to directly and proximately cause their injuries, as well as the other damages at issue here.

69.   Defendant Mozayeni and his assistant, Tony, contacted Linda Williams and Metin Gunsay and provided them with the details necessary to locate Brieanna.

70.   Linda Williams and Metin Gunsay called the Montgomery County Sheriff's Deputies and/or the United States law enforcement agents, and arranged for the deputies, marshals, and special agents to orchestrate a violent and unlawful seizure of the plaintiffs.

The law enforcement defendants coordinated with Linda Williams and Metin Gunsay, as well as defendant Mozayeni, to ensure that Kristen and Brieanna Gunsay would be in defendant Mozayeni's parking lot at the appointed time in order to effectuate the unlawful seizure of the plaintiffs.

71.  The defendants each took affirmative steps in concert with one another to bring about the unlawful arrest and seizure of the plaintiffs.

72.  As a direct and proximate result of the aforementioned conspiracy, and the defendants' participation in the conspiracy, plaintiffs suffered the emotional, physical, and financial damages described above.

WHEREFORE, Plaintiffs Brieanna Gunsay and Kristen Gunsay demand judgment against Defendants in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, but not less than FIVE MILLION DOLLARS ($5,000,000.00), and such other and further relief as the nature of the case requires.

## COUNT III
### (False Arrest – All Defendants Except Williams, Gunsay & Mozayeni)

73.  Plaintiffs adopt and incorporate by reference paragraphs 1-59 as if fully set forth herein.

74.  Brieanna Gunsay was seized at gun point by the rogue law enforcement defendants.

75.  Kristen Gunsay was seized at gun point by the rogue law enforcement defendants.

76.  After the law enforcement defendants arrested Kristen and took her to jail, they

held Brieanna in the parking lot of defendant Mozayeni's office trying to force her to meet with defendants Metin Gunsay and Linda Williams.

77. Each of the defendants' actions caused Brieanna and Kristen to be unlawfully deprived of their liberty.

78. The defendants had no legal basis or authority to detain, arrest, or deprive either plaintiff of her liberty for any reason.

79. As a direct and proximate result of the action of the defendant law enforcement defendants, plaintiffs suffered the emotional injuries, physical injuries, and financial damages described above.

WHEREFORE, Plaintiffs Brieanna Gunsay and Kristen Gunsay demand judgment against Defendants in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, but not less than FIVE MILLION DOLLARS ($5,000,000.00), and such other and further relief as the nature of the case requires.

## COUNT IV
### (Intentional Infliction of Emotional Distress – as against all Defendants)

80. Plaintiffs adopt and incorporate by reference paragraphs 1-59 as if fully set forth herein.

81. Defendant Dr. Mozayeni contacted Brieanna Gunsay's violent and abusive father, a man from whom she was actively hiding and against whom she had successfully sought a number of protective orders and restraining orders.

82. Defendant Dr. Mozayeni contacted Kristen Gunsay's violent and abusive ex-husband, a man from whom she was actively hiding and against whom she had successfully

sought a number of protective orders and restraining orders.

83. Dr. Mozayeni contacted Metin Gunsay as he was providing medical treatment to Brieanna.

84. After contacting Metin Gunsay, Brieanna Gunsay found herself in a parking lot, facing down armed sheriff's deputies. She saw her mother pulled from her vehicle, and arrested at gun-point, and she found herself forced to be in contact with M. Gunsay and his mother, all because of Dr. Mozayeni's actions.

85. After contacting Metin Gunsay, Kristen Gunsay found herself in a parking lot, facing down armed sheriff's deputies. She was pulled from her vehicle and arrested at gun-point, all because of Dr. Mozayeni's actions.

86. The law enforcement officers ran up to Kristen's vehicle with guns drawn, forcibly removed her from the vehicle, and then took her away.

87. Brieanna Gunsay watched this happen.

88. After immediately removing her mother from the area, the officers with guns drawn, forced Brieanna Gunsay into contact with her grandmother and her violent and abusive father, a man from whom she was actively hiding and against whom she had successfully sought a number of protective orders and restraining orders.

89. Despite numerous protective orders and restraining orders against him, prohibiting him from coming into contact with Brieanna, Linda and Metin Gunsay flew from Utah to Maryland to stalk Brieanna and Kristen.

90. As a result, Linda Williams and Metin Gunsay orchestrated a raid on Kristen, in which Kristen was arrested at gun-point, and taken away.

91. M. Gunsay and Linda Williams then forced their presence on Brieanna, despite

the numerous protective orders.

92.  Each of the defendants' actions were intentional or reckless, and were certain or substantially certain to result in severe emotional distress.

93.  The law enforcement officers' conduct of forcing Brieanna, with guns drawn, into contact with Metin Gunsay was extreme and outrageous.  The deputies' conduct was beyond all possible bounds of decency and utterly intolerable in a civilized society.

94.  The law enforcement officers' conduct of forcing Kristen Gunsay from her vehicle, falsely arresting, falsely imprisoning her, leaving her daughter to fend for herself against her violent and abusive ex-husband, and then towing her vehicle without justification, was extreme and outrageous.  The deputies' conduct was beyond all possible bounds of decency and utterly intolerable in a civilized society.

95.  Dr. Mozayeni's conduct of contacting Brieanna's violent and abusive father and disclosing Brieanna's whereabouts to him was extreme and outrageous, and beyond all possible bounds of decency and utterly intolerable in a civilized society.

96.  Plaintiffs have suffered mental and emotional distress of a severe nature, as indicated by continuing physical and emotional symptoms.

97.  There is a causal connection between the Defendants' wrongful conduct and Plaintiffs' emotional distress.

98.  As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the emotional injuries, physical injuries, and financial damages described above.

WHEREFORE, Plaintiffs Brieanna Gunsay and Kristen Gunsay demand judgment against Defendants in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at

trial, but not less than FIVE MILLION DOLLARS ($5,000,000.00), and such other and further relief as the nature of the case requires.

### COUNT V
### (Violation of Maryland Declaration of Rights – All Defendants Except Williams, Gunsay & Mozayeni)

99.  Plaintiffs adopt and incorporate by reference paragraphs 1-59 as if fully set forth herein.

100.  Defendants engaged in activity that violated Plaintiff's rights as protected under the Maryland Constitution.

101.  Defendants' actions, including, but not limited to, the use of excessive and unnecessary force against Brieanna and Kristen, engaging in an unlawful seizure and false imprisonment of Brieanna and Kristen, and forcing Brieanna into contact with her violent and abusive father and his mother, deprived Plaintiffs of their rights under the Maryland Declaration of Rights, including, but not limited to:

(a)     freedom from imprisonment and seizure of freehold, liberty and privilege without due process, and without judgment of his peers;

(b)     freedom from the deprivation of liberty without due process of the law, and without the judgment of his peers;

(c)     freedom from the abuse of power by the police; and

(d)     freedom from summary punishment.

102.  Plaintiffs have a right to be free from excessive force.  Plaintiffs were denied these rights when the officers manhandled Kristen and Brieanna, and forced Brieanna into contact with her violent and abusive biological father and his mother.

103.  Plaintiffs have a right to be free from the deprivation of liberty without due process of law.  Plaintiffs were denied these rights when Defendants, with guns drawn,

arrested Kristen, falsely imprisoned Kristen, and forced Brieanna into contact with her violent and abusive biological father and his mother.

104.  Plaintiffs have a protected property and liberty interest in their freedom, their ability to exercise their free will and domain over her person, and their ability to be free from unlawful and excessive police force.

105.  Defendants deprived Plaintiffs of numerous protected property and liberty interests.

106.  Defendants afforded Plaintiffs less process than was due under law by depriving her of the rights in question.

107.  Defendants' actions, including, but not limited to, the use of excessive force, unlawful seizure, and forcing plaintiff into contact with her violent and abusive father and his mother, deprived plaintiff of his constitutional rights under Articles 24 and 26 of the Maryland Declaration of Rights, including, but not limited to, freedom from abuse of power by the police.

108.  The individual defendants, at all times relevant hereto, acted under color of State law, federal law, and the United States Constitution, and in a manner which was not objectively reasonable.

109.  As a direct and proximate result of defendants' conduct, plaintiffs suffered the emotional injuries, physical injuries, and financial damages described above.

WHEREFORE, Plaintiffs Brieanna Gunsay and Kristen Gunsay demand judgment against Defendants in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, but not less than FIVE MILLION DOLLARS ($5,000,000.00), and such other and

further relief as the nature of the case requires.

## **JURY DEMAND**

Plaintiff demands a jury trial as to all claims so triable.


Respectfully submitted,


 /s/ Gregory L. Lattimer
Gregory L. Lattimer, [15462]
1200 G Street, NW
Suite 800
Washington, D.C.  20005
(202) 638-0095

Counsel for the Plaintiffs