**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BRIANNA GUNSAY, et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | **Civil No. JFM-14-01347** |
| **v.** | * | |
| **B. ROBERT MOZYANI, M.D., et al.,** | * | |
| | * | |
| **Defendants.** | * | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN**
**OPPOSITION TO THE MOTION TO DISMISS OR FOR SUMMARY**
**JUDGMENT FILED BY DEFENDANTS GUNSAY AND MOYER WILLIAMS**

Come now, the plaintiffs, by and through counsel and hereby submit their opposition to the motion of defendants Metin Gunsay and Linda Moyer Williams to dismiss plaintiffs' amended complaint or for summary judgment. For the reasons set forth below, the defendants' motion is without significant basis.

A. **Statement of the Case**

On April 21, 2014, the plaintiffs initiated this lawsuit. On August 11, 2014, the plaintiffs filed a six(6) count amended complaint naming as defendants, Metin Gunsay and Linda Moyer Williams among others. That complaint discusses the dissolution of the marriage of the Gunsays and the international custody battle that subsequently ensued. It further discusses the fact that the attempts of defendants Metin Gunsay and Linda Williams to force Brieanna Gunsay to embrace and communicate with them continues to this day even though she is now well past the age of majority and completely at liberty to make up her own mind as to who she wishes to associate.

As set forth in the amended complaint, plaintiff Brianna Gunsay began receiving specialized

medical treatment in the United States at Johns Hopkins University and some of her medical treatment from defendant Dr. B. Robert Mozayeni. Brieanna would see defendant Mozayeni for her rare infection and hyperbaric oxygen treatment (HBOT).  In response to bizarre questioning about her father, Brianna revealed to defendant Mozayeni that defendant M. Gunsay had been very abusive to her, that wanted nothing to do with him, and that she had a permanent restraining order against him.  Unbeknown to the plaintiffs at the time, defendants Mozayeni, M. Gunsay and Williams were all in cahoots together trying to arrange a time and place for the plaintiffs to be ambushed.

In furtherance of their scheme, defendant M. Gunsay contacted rogue individuals employed in the area of law enforcement and was able to convince them to enlist a number of other corrupt individuals employed in the field of law enforcement to detain and imprison the plaintiffs in collusion with defendant Mozayeni and his assistant, Tony.  At approximately 4:30 p.m., on April 19, 2011, the plaintiffs arrived in the parking lot of defendant Mozayeni's medical office for a scheduled appointment to start one of her treatments.  As they did so, four cars containing 9 armed rogue law-enforcement officers, which included the defendant officers, did then and there seize the plaintiffs at gun point.  Officers with the Montgomery County Sheriff's Department purported to serve a bogus warrant upon plaintiff Kristen Gunsay in the parking lot of the offices of defendant Mozayeni, who had choreographed the entire encounter.

The officers jumped out of their vehicles, and approached Brieanna and her mother's vehicle with their guns pointed at their heads, treating the situation as a felony-stop, and treating Brieanna's mother as a violent and dangerous fugitive. After approaching the vehicle, the officers pointed their guns directly at Kristen and Brieanna's heads, and ordered Kristen to unlock the door. The officers

pulled Kristen out of her vehicle and threw her onto the ground. Brieanna was also forced out of the car with guns pointed at her head. She was grabbed and held at gunpoint as she became extremely upset. The officers, who were not in uniform, would not answer Brieanna, they only threatened her with profanities. When Brieanna demanded an explanation, the officers would not tell Brieanna what was happening. Instead, they attempted to force her to meet with defendants Metin Gunsay and Linda Williams. She was told that she could not leave until she did so. After the officers took Kristen away, they continued to detain Brieanna, all the while telling her that she had been kidnapped and brainwashed by her mother. Brieanna tried to explain the protective orders and her biological father's violent and abusive past, to no avail.

The defendant officers instructed Brieanna that she had no choice and that she was going to see her father and grandmother. Brieanna refused, but the officers insisted on the interaction. The defendant officers grabbed, and yanked her by the arms, pushed and manhandled Brieanna, physically encircled Brieanna and held her against the car. Because of Brieanna's weakness from her illness, and her disabilities and neck injury, she was terrified that the defendant officers were going to permanently physically injure her during this ordeal.

As the officers encircled Brieanna, defendant Williams was allowed to approach Brieanna, grab her and hold her fixed by the shoulders and arms. When this occurred, Brieanna pleaded with the defendant officers not to force this contact, advised that she did not want the contact and told them that they needed to leave her alone.  During the forced encounter, the defendant officers had their guns drawn on Brieanna, searched Kristen's car and took away Brieanna's personal belongings, including her passport, phone, medical records, photographs, and other personal items.

After holding her for more than an hour after they had stopped and removed her mother from

the scene, the rogue officers finally allowed Brieanna to leave when it became apparent that she was going to continue to refuse to be forced into a car with defendants M. Gunsay and Williams. At all times relevant hereto, the defendants acted without legal justification or excuse. At all times relevant hereto, the defendant officers acted deliberately, with ill will, improper motive and actual malice. It is against the backdrop of these facts, as alleged in plaintiffs' amended complaint, that defendants Gunsay and Williams have moved this court to dismiss all of plaintiffs' claims or prematurely grant them summary judgment.

**B.      The Applicable Standard For A Fed. R. Civ. P. Rule
         12(b)(6) Motion To Dismiss For Failure To State A Claim**

The Fourth Circuit has repeatedly ruled that a complaint must not be dismissed unless it appears to a certainty that plaintiff is not entitled to relief under any plausible theory under the facts alleged.  In, *Edwards*, *supra at* 178 F.3d at 243-4, the Court stated:

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id.* Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, "we must be especially solicitous of the wrongs alleged" and **"must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be***

*suggested by the facts alleged*." *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988) (internal quotation marks omitted) (emphasis added).

Accordingly, defendants cannot prevail on their motion to dismiss unless they can demonstrate that plaintiffs are not entitled to relief under any theory which might be plausible. For the reasons set forth below, defendants cannot meet this burden.

## C. Standard of Review For Summary Judgment

"In determining whether summary judgment is appropriate, [the court] must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Odom v. South Carolina Dept. Of Corrections*, 349 F.3d 765, 769 (4th Cir. 2003). "The burden of proof and persuasion with respect to a claim of qualified immunity is on the defendant official." *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th cir. 2003).

> This Court has consistently ruled when reviewing a motion for summary judgment, a defendant is entitled to summary judgment on grounds of qualified immunity when there is no genuine issue of material fact, and when the undisputed facts establish that the defendant is entitled to judgment as a matter of law. We have emphasized the importance of resolving the question of qualified immunity at the summary judgment stage rather than at trial. However, we have also recognized that the qualified immunity question can be difficult for a court to resolve as a matter of law, as it can at times require "factual determinations respecting disputed aspects of [a defendant's] conduct." The importance of summary judgment in qualified immunity cases "does not mean . . . that the summary judgment doctrine is to be skewed from its ordinary operation to give special substantive favor to the defense, important as may be its early establishment." [Citations omitted.]

*Wilson v. Kittoe*, 337 F.3d 392, 397 (4TH Cir. 2003).

In reviewing qualified immunity defenses, this Court "must view the facts in the light most favorable to the nonmoving party." *Vathekan v. Prince George's County, Maryland*, 154 F.3d 173

(4th Cir. 1998), quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) and "must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence. *Id.*, quoting *Mason v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). The Fourth Circuit in *Ross v. Communication Satellite Corp.*, 759 F.2d 355 (4th Cir. 1985), went on to further state:

> Care is required in deciding whether the evidence presents a genuine issue of motive, for "summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense." *Charbonnages de France v. Smith*, 597 F.2d at 414. Resolution of questions of intent often depends upon "the credibility of the witnesses, which can best be determined by the trier of facts after observation of the demeanor of the witnesses during direct and cross-examination." *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979). *Ross, supra* at 364-65.

Generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to [her] opposition." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 250 n.5, (1986).

### D. <u>Argument</u>

#### 1. <u>There Is No Statute Of Limitations Issue</u>

Defendants Gunsay and Moyer Williams contend that plaintiffs' lawsuit, with respect to Counts II & IV, is barred by the applicable statute of limitations. According to these defendants, the referenced Counts of plaintiffs' complaint have a three (3) year limitations period and because the underlying incident occurred on April 19, 2011, plaintiffs' complaint had to be filed on or before April 18, 2014. Mot. Mem. at 9. However, April 19, 2011 to April 19, 2014 constitutes three (3) years, just as Christmas day 2014 is a year after Christmas day 2013. No one who turned twenty-five (25) on April 19, 2011 would turn 26 on April 18, 2012, he/she would turn twenty-six (26) one-year

later on April 19, 2012.

Plaintiffs' complaint was filed on April 21, 2014.   Fed. R. Civ. P. 6 (a) provides as follows:

Computing Time. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.

  (1) Period Stated in Days or a Longer Unit. When the period is stated in days or a longer unit of time:

    (A) exclude the day of the event that triggers the period;

    (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and

    (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Md. Rule 1-203 provides in relevant part as follows:

  (a) Computation of time after an act, event, or default. In computing any period of time prescribed by these rules, by rule or order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not included. If the period of time allowed is more than seven days, intermediate Saturdays, Sundays, and holidays are counted; but if the period of time allowed is seven days or less, intermediate Saturdays, Sundays, and holidays are not counted. The last day of the period so computed is included unless:

(1)  it is a Saturday, Sunday, or holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or holiday;

Three years from April 19, 2011, was Saturday, April 19, 2014.  Because the last day of the three (3) year period was a Saturday, and the next day that was not a Saturday, Sunday or holiday was Monday, April 21, 2014, plaintiffs' complaint, that was in fact filed on April 21, was timely as a matter of law.

There is no statute of limitations issue in this case.

**2.     The Plaintiffs Have Alleged That The Warrants At Issue Were
Bogus And There Are No Undisputed Facts To The Contrary**

These defendants suggest that the warrant for Kristen Gunsay's arrest was valid and

therefore, no cause of action for false arrest or conspiracy to conduct a false arrest exists.   As noted

above:

> The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a
> complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests
> surrounding the facts, the merits of a claim, or the applicability of defenses."

*Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  A Rule 12(b)(6) motion can only

be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and

drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain

that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id.*

The defendants here are not saying that even if everything that the plaintiffs allege were true,

no basis for a finding of liability would exist instead, they argue that the actual facts are different

than the facts alleged by the plaintiffs and because the facts are different, in their favor, they are

entitled to judgment as a matter of law.  However, the 4th Circuit has made it abundantly clear that:

> A party moving to dismiss a complaint under Rule 12(b)(6) is "test[ing] the
> sufficiency of [the] complaint" and asserting, in effect, "that the plaintiff [is not]
> entitled to relief under any legal theory which might plausibly be suggested by the
> facts alleged." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)
> (internal quotation marks omitted). The court should grant a Rule 12(b)(6) motion
> only "if, after accepting all well-pleaded allegations in the plaintiff's complaint as
> true and drawing all reasonable factual inferences from those facts in the plaintiff's
> favor, it appears certain that the plaintiff cannot prove any set of facts in support of
> his claim entitling him to relief." Id. at 244.

*Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F. 3d 700, 705 (4th Cir. 2010).   With

respect to the arrest warrant(s) for Kristen Gunsay, the issue comes down to whether or not the

alleged warrants were valid and what involvement, if any, did these defendants have in promulgating them.  The entire basis of the defendants' motion in this regard rests on materials outside the pleadings none of which are attached to plaintiffs' complaint, the motion to dismiss or is alleged to be authentic, and as such, this aspect of defendants' motion may not be considered by the court. *Id*. at 705.

**3.    The Conduct Of Metin Gunsay And Linda Moyer Williams Was Not Only Extreme, Outrageous, Beyond The Bounds Of Decency And <u>Intolerable In A Civilized Society It Was Despicable And Disgusting As Well</u>**

In their amended complaint, the plaintiffs essentially allege that Metin Gunsay and Linda Moyer Williams, who live in the State of Utah, maintained a web site pertaining to plaintiff Brieanna Gunsay wherein they disparage her life, and accuse plaintiff Kristen Gunsay of kidnapping and brainwashing Brieanna.  The plaintiffs further allege that a stupid and meddlesome doctor viewed the website, for whatever reason, contacted Metin Gunsay and then inexplicably conspired with him to the detriment of his patient, to  have Kristen Gunsay taken away by the police just long enough to have Brieanna Gunsay put in a position where she felt alone, and desperate enough that Metin Gunsay and Linda Moyers Williams could abduct and/or finagle her back to Utah.

These defendants, with the help of Brieanna Gunsay's medical doctor, caused Brienna Gunsay to be stopped at gunpoint; to watch her mother be pulled from a car and be physically assaulted and manhandled; to be forced from the vehicle that her mother was driving with guns pointed at her head; to be held at gunpoint for an hour while rogue police officers tried to force her into a vehicle to meet with them and who told her that she would not be able leave until she did so, plainly against her will.  Only after it became clear that Brieanna Gunsay was not going to get into a vehicle with these defendants and was not going to meet with them was she allowed to leave.  And

-9-

after she did, Metin Gunsay despicably posted materials on a website, for all the world to see, ridiculing Brieanna's lifestyle and sanity without regard for her illness and the stress associated therewith.

In ¶¶30-53 & 75-91 of their amended complaint, the plaintiffs set forth in excruciating detail the conduct that caused emotional distress, fully and unequivocally allege that the distress which they suffered was serious and severe and clearly identify these defendants as two of the individuals responsible for their emotional distress, just as is required under Maryland law. *Foor v. Juvenile Services Admin.*, 78 Md. App. 151, 175, 552 A.2d 947, *cert. denied*, 316 Md. 364, 558 A.2d 1206 (1989). The plaintiffs have sufficiently pled intentional infliction of emotional distress as a matter of law.

**4.    Absolutely No Basis At All Exists For Summary Judgment With Respect To Plaintiffs' Claim For Intentional Infliction Of Emotional Distress**

In an attempt to obfuscate the issue, defendants Gunsay and Williams proclaim that "The major basis for Plaintiffs' claim that Defendants' conduct was extreme or outrageous is that they disregarded certain Canadian protective orders. Aside from that there are no factual allegations that could satisfy the 'extreme or outrageous' element." Mot. Mem. at 14. Clearly, in addition to being wicked, evil and dastardly, these defendants are delusional as well. Plaintiffs have set forth in their complaint a tale of horror that literally shocks the conscience that was perpetrated by these defendants. And while the dastardly acts of these defendants have indeed spanned decades, what the plaintiffs have deemed actionable are the maneuvers taken in 2011 when these defendants orchestrated the apprehension of the plaintiffs in the parking lot of Brieanna's equally despicable health care provider. As noted in the affidavits of the plaintiffs submitted herein as Exhibits 1 & 2,

the basis of their claim for intentional infliction of emotional distress is what occurred in 2011, in Maryland.

Too be sure, these defendants want this case to be about something other than their indefensible actions which culminated in the parking lot of their co-conspirator, defendant Moyzayeni. Moreover, these defendants seem to be the ones who have it all twisted, it is not just "Kristen" who is alleging that they intentionally inflicted emotional distress upon her and Brieanna, Mot. Mem. at 15, it is Brieanna herself who alleges the outrageous conduct of Metin Gunsay and Linda Moyer Williams. Exhibit 1.

Fed. R. Civ. P. 56 provides in relevant part as follows:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Here, these defendants have not identified a single undisputed material fact that would entitle them to summary judgment with respect to plaintiffs' claim for intentional infliction of emotional distress. In fact, the defendants do not even seem to understand the nature of plaintiffs' claim as they somehow have deluded themselves into believing that the plaintiffs have an interest in re-litigating a child custody matter regarding an individual who is no longer a child, as if that makes any sense at all. The time for Brieanna Gunsay to be in the "custody" of Kristen Gunsay or Metin Gunsay has long since passed. Brieanna Gunsay is a grown woman now and has been since 2007. This case has nothing whatsoever to do with who should or should not have had custody in the past, it is about the fact that Metin Gunsay and Linda Moyer Willaims fail to grasp the reality that one cannot unring a bell, or accept the fact that Brieanna Gunsay is an adult, with a mind of her own. She is no one's property, and the choices that she has made in her life have to be respected. Had any of these things

made a difference to Metin Gunsay or Linda Moyer Williams, they would not have been in Maryland, in the parking lot of defendant Moyzayeni on April 19, 2011, causing the traumatic events described in Exhibits 1& 2.

Summary judgment clearly is not warranted under the facts and circumstances of this case with respect to plaintiffs' claim for intentional infliction of emotional distress.

## 5. None Of Plaintiffs' Claims Are Barred By Res Judicata

Defendants Gunsay and Moyer Williams contend that the plaintiffs' claims are barred by res judicata and that simply is not the case.  In support of their position they have provided a copy of an order in Case No. 376883V from the Circuit Court for Montgomery County indicating that certain claims against Linda Moyer were dismissed.  However, Md. Rule 2-602 provides that:

  (a) Generally. Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1)  is not a final judgment;

In further support of their position, these defendants suggest that a voluntary dismissal in Case No. 362108-V invokes the doctrine of res judicata. The Maryland Rules say otherwise.

Unless otherwise specified in the notice of dismissal, stipulation, or order of court, a dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a party who has previously dismissed in any court of any state or in any court of the United States an action based on or including the same claim.

Md. Rule 2-506(d).  It is well established that " A dismissal pursuant to an order of dismissal which does not otherwise specify its effect is without prejudice." *State ex rel. Lennon v. Strazzella*, 331 Md. 270, 627 A.2d 1055 (1993), and a dismissal "being without prejudice, is not final disposition of case

on merits and does not bar another suit on the same cause of action." *Williams v. Snyder*, 221 Md. 262, 157 A.2d 265 (1960).  Succinctly stated, "a voluntary dismissal of a suit settles no rights, and the plaintiff is entirely at liberty to bring a new suit if he sees fit, which will be considered as a wholly new proceeding, without reference to the abandonment of the former action." *McQuaid v. United Whsle. Aluminum Supply Co.*, 31 Md. App. 580, 358 A.2d 922 (1976).

As these defendants note themselves, under the doctrine of *res judicata*, a party is precluded from re-litigating a matter 1) that was previously resolved through a final judgment on the merits; 2) where the parties (or their privies) are the same; and 3) where the matter litigated is the same. *North American v. Boston Medical*, 170 Md. App. 128, 906 A.2d 1042, 1047 (2006).  In this case, Brieanna Gunsay has alleged a claim for conspiracy(Count II) and intentional infliction of emotional distress (Count IV) against these defendants.  While it is true that she brought the same claims in Case No. 362108V in the Circuit Court for Montgomery County, as these defendants' Exhibit 2 indicates, these claims were voluntarily dismissed, pursuant to Md. Rule 2-506(a)(1) by Brieanna Gunsay in 2013.  As such, they may not be considered for purposes of res judicata. *McQuaid, supra*. The fact of the matter is that there no claims being advanced by the plaintiffs in this case that have ever been addressed in any other court action, wherein they and these defendants have been parties.

Wherefore for the reasons stated herein and in the record of this proceeding and because the Amended Complaint is only required to put defendants on notice of the claims against them, and the defendants have completely failed to identify a single undisputed material fact that would entitle them to summary judgment, it is respectfully requested that this Court deny defendants' motion as set forth herein.

Respectfully submitted,

_____/s/_____
Gregory L. Lattimer [15462]
1200 G Street, N.W.
Suite 800
Washington, D.C.  20005
Tel. (202) 434-4513