IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | |
|---|---|
| BRIEANNA GUNSAY, *et al.* * | |
| Plaintiffs, * | |
| | **Civil No.: JFM-14-01347** |
| v. * | |
| SGT. JEFFREY PLUMMER, *et al*. * | |
| Defendants. * | |
| _____ | |

**DEFENDANTS HENDERSON & STULTZ' MOTION FOR
PROTECTIVE ORDER AND OTHER APPROPRIATE RELIEF**

COME NOW, the Defendants, Lt. Greg Henderson, and Deputy Kevin Stultz, by and through their undersigned attorneys, and move this Honorable Court pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 30(d)(3)(A) for a protective order, and other appropriate relief, and state as follows:

**INTRODUCTION**

Defendants Henderson and Stultz seek a protective order and other appropriate relief based on Plaintiff' counsel's disrespectful and unprofessional behavior during Defendant Henderson's recent deposition. As a result of Mr. Lattimer badgering Defendant Henderson, and then raising his voice and cursing at defense counsel, the deposition was immediately concluded. After defense counsel concluded the deposition, ***Mr. Lattimer threatened defense counsel, stating, "man, you better get your punk ass out of here***." *See* Exhibit 1 (Transcript at pp. 35-36, lines 22, 1).

1

The transcript certainly speaks for itself, and is attached hereto in its entirety as Exhibit 1.

## BACKGROUND

On October 23, 2015, a week and a half before the discovery deadline, Mr. Lattimer noted the depositions of Defendants Henderson, Stultz and Plummer for October 28, 2015. Both the undersigned counsel and counsel for Defendant Plummer (Mr. Gordon) agreed to produce their respective clients despite the short notice and late request.[1] On October 28, 2015, the depositions began with Defendant Henderson. Present were the undersigned counsel, Defendant Stultz, Mr. Gordon (counsel for Defendant Plummer), and Mr. Lattimer (counsel for Plaintiffs).

It was clear from the start of the deposition that Mr. Lattimer's entire demeanor, attitude, and tone with respect to his treatment of Defendant Henderson would be sarcastic, aggressive, disrespectful, and harassing. The transcript reveals various instances of Mr. Lattimer's discourteous behavior and badgering of Defendant Henderson, including the following exchange, and the one that followed that ultimately ended the deposition.

>  Mr. Lattimer: Okay, so you saw documents from Utah indicating that Brieanna Gunsay was the victim of a kidnapping?
>  Mr. Levine: Objection to the form. Misstates the testimony.
>  A: I don't recall if I saw any documents or not.
>  Mr. Lattimer: Okay. So I'm asking you, What is it that gave you the impression that Brieanna Gunsay was the victim of a kidnapping?
>  Mr. Levine: Objection. He's already answered that.
>  A: I've answered that question.
>  Mr. Lattimer: Okay. Try it again. ***I didn't hear the answer***.

---

[1] Under the Court's Scheduling Order, discovery closes November 3, 2015. *See* ECF 49.

2

*See* Exhibit 1 at pp. 31-32, lines 21-22, 1-7).

As the transcript reflects, Mr. Lattimer did not contend that the question had in fact not been answered. Instead, he said that he did not *hear* the answer. In response, the undersigned suggested that the court reporter simply read the answer back. The witness indicated that he would not answer it again.

> Mr. Levine: Objection. The court reporter can read it back if you want to hear it again. He's not going to answer it again.
> Mr. Lattimer: ***Yes, he is, or you need to call somebody***.
> Mr. Levine: Ask your next question.
> Mr. Lattimer: My question is pending.
> A: I've answered that question.
> Mr. Lattimer: Try it again.
> Mr. Levine: Objection.
> Mr. Lattimer: Answer it again. ***I didn't hear your answer***. So, please, answer my question again.
> Mr. Levine: We have a court reporter that can read his answer back to you. Ask your next question.
> Mr. Lattimer: My question is pending. ***I got time. You got time***?[2]
> A: I've got time.
> Mr. Lattimer: Fine.
> Mr. Lattimer: Can we re-read my question back?
> Reporter: Can you give me a hint as to what it was? - - because I'm not sure that I even know what the last question was.
> Mr. Lattimer: Okay. Well, get back to the last question with regard to what gave him the information that Brieanna Gunsay was the victim of a kidnapping.
> Mr. Levine: (to the reporter) And if you would please read his answer.
> Reporter: Okay. It's going to go back a little while here.
> Mr. Levine: Okay.
> Reporter: (Reading aloud).

\*\*\*

---

[2] Mr. Lattimer appeared to be willing to sit in silence for as long as it took to make Defendant Henderson repeat his answer.

3

Mr. Lattimer: My question is still pending. There's no document. Where did they say that? Where did that come from?
Mr. Levine: That's a different question.
Mr. Lattimer: Call it what you want.
Mr. Levine: It's a different question. He can answer that question if he knows.
Mr. Lattimer: *He's gonna answer every question. You can count on that*.
Mr. Levine: Sir, I –
Mr. Lattimer: *Look, you can yap all you want to, but, trust me, you are not going to deny this, no, no. That is one thing that is guaranteed here. So now, you can yap all you want to, but I can guarantee you how this is not gonna go. Now, again, we don't have to discuss this, because this is not going to go the way you think it is*.
Mr. Levine: Please lower your voice.[3]
Mr. Lattimer: *Fuck at you, man*.
Mr. Levine: This deposition is over. We'll file a motion for a protective order. Thank you. Goodbye. This may work in your other cases, this cheap New Jersey kid stuff.[4] It's not going to work here.
Mr. Lattimer: *Man, you better get your punk-ass out of here*.

See Exhibit 1 (Transcript) at pp. 32-35 (emphasis added).

Based on Mr. Lattimer's aggressive raising of his voice, his discourteous language, and his badgering of Defendant Henderson, the undersigned counsel terminated the deposition, as well as the deposition that would follow of Defendant Stultz, who was also present. As the transcript reflects, Mr. Lattimer's parting words were the threat that the undersigned counsel "better get [his] punk-ass out of here."

---

[3] Mr. Lattimer had at that point elevated his voice while addressing the undersigned counsel to close to yelling.
[4] The undersigned actually described Mr. Lattimer's tactics as "cheesy, greasy kid's stuff," but it was not taken down accurately by the Reporter.

Later in the day, Mr. Lattimer took the deposition of Defendant Plummer (Mr. Gordon's client) without incident. His entire demeanor and attitude had also changed.[5]

## ANALYSIS

Local Rule 606 provides that "[t]he Court expects ... all counsel to conduct themselves in a professional and courteous manner in connection with all matters pending before the Court." In addition, Discovery Guideline 1d requires that counsel "behave professionally and with courtesy towards all involved in the discovery process, including but not limited to opposing counsel, parties and nonparties." Indeed, these rules and guidelines apply to the conduct of an attorney taking a deposition, "and an attorney who is abusive to counsel and/or a witness during a deposition violates them." *Freeman v. Schointuck,* 192 F.R.D. 187, 188 (D. Md. 2000) (ordering counsel who engaged in similar unprofessional behavior during a deposition to write an apology letter and take a professionalism course); *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 584 (D. Md. 2010) (abusive conduct toward a party or opposing counsel during a deposition is a violation of Local Rule 606.).

Without question, the transcript reflects that Mr. Lattimer did not comply with either rule or guideline.

Both Fed. R. Civ. P. 26 and Fed. R. Civ. P. 30 provide for the issuance of protective orders when necessary to prevent a party from harassment. In particular, Fed. R. Civ. P.

---

[5] The undersigned counsel can only surmise that Mr. Lattimer harbors some sort of personal animus towards the undersigned.

26(c) allows a party to seek the court's protection from harassment or oppression, including forbidding the discovery, or specifying the terms for the discovery.

> Fed. R. Civ. P. 30 (d)(3)(A) also provides:
>
> (A) *Grounds.* At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

Moreover, this district has previously made clear that when counsel taking a deposition engages in the type of misconduct that Mr. Lattimer engaged in here, terminating the deposition is the appropriate course of action. *Mezu*, 269 F.R.D. at 584.

As the transcript reflects, Mr. Lattimer's questioning of Defendant Henderson, and then focus on attempting to intimidate his counsel, were bright-line violations of not only the court's rules, but of the very basic tenets of civility – all culminating in Mr. Lattimer's threat that counsel "better get [his] punk-ass out of here," an outrageous thing to say to someone, particularly within the context of a discovery deposition.

## CONCLUSION

The foregoing having been considered, Defendants Henderson and Stultz respectfully request that the Court issue an Order that the depositions of Defendants Henderson and Stultz not be had, as well as such other and further relief as the Court deems appropriate.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

_____/s/_____
Jason L. Levine (# 16631)
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6388 (tel.)
(410) 576-6393 (fax)
jlevine@oag.state.md.us

*Attorneys for Defendants*
*Henderson and Stultz*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2015, a copy of the foregoing was filed and served via the Court's CM/ECF system upon the persons entitled to receive such notice.

_____/s/_____
Jason L. Levine
Assistant Attorney General